**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the

# Supreme Court of Georgia

No. S26A0415
The State
v.
Shannon Antonio Postell

On Appeal from the Superior Court of Bulloch County
No. SU20CR287

Decided: June 30, 2026

BETHEL, Justice.

A Bulloch County jury found Shannon Antonio Postell guilty of malice murder and other crimes in connection with the shooting death of his nephew Robert Keyjuan Lawson. The trial court subsequently granted Postell's motion for new trial, ruling that evidence, known to Postell, of Lawson's propensity for violence and of Lawson's prior acts of violence had been wrongly excluded. The State appeals. See OCGA §§ 5-7-1(a)(8); 5-7-2(c). For the reasons that follow, we affirm.

1.      The evidence presented at trial showed as follows. On March 30, 2020, Postell shot and killed Lawson outside their family's neighboring homes. Postell lived in one home with his mother (Lawson's grandmother); Postell's sister Erma West and their niece Ty'Asia Lawson (Lawson's sister) lived next door. Three days before the shooting, West forbade Lawson from staying in her home after discovering he had brought guns into the home, and Lawson moved some of his belongings next door to the home Postell shared with his mother. On the morning of the shooting, Postell and Lawson engaged in what began as a verbal altercation and culminated in Lawson's shooting and death.

The first police officer to respond to the scene found the deceased Lawson at the edge of a field outside Postell's mother's home with a single gunshot wound to the chest and a nine-millimeter handgun near his hand. The gun was fully loaded with 17 rounds of ammunition — 1 in the chamber and 16 in the magazine. The handgun had a slide, and there was blood on the handgun's grip. Lawson had dried blood and an injury on his right hand, and Postell argued the injury was consistent with what is commonly known as a "slide bite."[1] Investigators found Lawson's shoe prints in the field behind the homes, traced his path through the field, and found no evidence that anyone had chased Lawson or moved his body. Postell, who was not at the scene when law enforcement arrived, was arrested later that evening.

The next day, Postell participated in a custodial interview during which he claimed he had no knowledge of Lawson's death until being informed by friends and did not assert that he acted in self-defense. During a second custodial interview the next day,[2] Postell explained that, before the shooting, he and Lawson

[1] A witness testified that a "slide bite" can occur "if [the shooter] has big hands or if [he has] a high grip on the firearm, when the slide comes back and moves forward as the round is fired and ejected, the bottom of the slide can bite the top of the hand. The bite would be a scrape or an abrasion."

[2] This interview was audio- and video-recorded and was played for the jury at trial. The summary of that interview above is based on the investigator's trial testimony. The interview footage is part of the appellate record, but Postell's statements in the interview are very difficult to understand. The jury raised this issue at trial, sending a note to the trial court requesting a transcript of the interview and indicating that "this second interview is important," they "could not understand three-fourths of [Postell's] comments," and it was "[n]ot a matter of loud or soft." The prosecutor agreed that Postell was difficult to understand, noting that he had to watch the interview "several different times" to understand what was said. The trial court responded to the jury's note by indicating that there was no transcript and that "you alone must decide what was said or not."

had a verbal altercation, that he walked next door and confronted Lawson in his bedroom, and that he retreated from the home when Lawson brandished a gun and pointed it at him. Postell then returned to his own home and began gathering up Lawson's belongings, including a rifle, and moving them outside for Lawson to collect. During this process, Postell saw Lawson "pop[ ] up" in the field behind the family's homeS and point a handgun at Postell. Postell responded by firing the rifle at Lawson. Postell saw Lawson "go down" but did not know he had hit Lawson. Afterward, Postell threw the rifle into a drainage culvert near the house, where it was later located by investigators. Postell then contacted a friend to pick him up and take him to work.

During the interview, Postell spoke about, among other things, Lawson's affiliation with the Bloods street gang and reputation for violence, the fact that Lawson had spent time in a juvenile correctional facility, his knowledge that Lawson was "responsible for three deaths already," his attempts to "get [Lawson] out of that [gang] life," and his knowledge that Lawson had committed several robberies during which he stole guns. As discussed in Division 2 below, the trial court, on the State's motion, redacted these details from the recording of Postell's interview, which was played for the jury at trial.

At trial, Ty'Asia (Postell's niece and Lawson's sister) was the sole witness to testify for the State regarding the events leading to the shooting. According to Ty'Asia, she was inside the home she shared with West while Lawson smoked a cigarette on the front porch. Postell, who was next door on his own front porch, began arguing with Lawson about money Lawson owed Postell, and Lawson ran into the house and to his bedroom. Ty'Asia did not know what Lawson did after running into the house, but she believed he retrieved a gun from his room. Ty'Asia then walked

3

outside and saw Postell go inside his own home. Ty'Asia went next door to speak to her grandmother, then walked back toward the door and saw Postell on the porch shooting a "big," "long" gun in the air. She saw Lawson behind the houses but denied seeing Lawson get shot. Sometime later, West went outside to look for Lawson and found that he had been shot.

Postell testified in his own defense at trial, and his testimony was largely consistent with his statements during the second custodial interview. He elaborated on his and Lawson's initial confrontation in Lawson's bedroom, testifying that, when he walked into the bedroom, Lawson pointed a nine-millimeter handgun directly at Postell and said, "[D]on't make me do it, you know I will do it." Postell responded by raising his hands and backing out of the house while telling Lawson to retrieve his belongings from next door. While Postell was moving Lawson's belongings outside, including the rifle, he saw Lawson in the field behind the homes and noticed Lawson had changed into a pair of red shorts. Upon being spotted by Postell, Lawson "popped up out [of] the field" and began walking toward Postell, pointing a gun and threatening to "bust" him. Hearing his mother inside the house coming to the door, Postell yelled at Lawson three times to drop the gun. Lawson continued advancing, and Postell fired the rifle in Lawson's direction. Lawson ran off. Postell explained that he threw the rifle in a drainage culvert near the home and went to a neighbor's home because he was "trying to get away … and diffuse the situation." Postell testified that he fired at Lawson because he was afraid Lawson would kill him and because, if Lawson had "started shooting, he could have killed [Postell] and [Postell's] mother." As to his failure to assert self-defense during his first custodial interview, Postell testified that he did not know at that time that he had been charged with a crime. As detailed in Division 2, the trial court denied Postell's motion to offer his

4

own testimony regarding Lawson's character for violence and Lawson's prior specific acts about which Postell had knowledge at the time of the shooting.

On cross-examination, Postell denied shooting Lawson over anger about the money Lawson owed him, but he admitted telling Lawson that he wanted his money or he was "gonna beat [Lawson's] a\*\*." Postell also acknowledged that he did not call 911 after the shooting and instead went to work, explaining that his failure to call 911 or mention the shooting to the friend who drove him to work was because he did not know he had shot Lawson. The State introduced evidence of Postell's 2009 and 2012 convictions for riot in a penal institution, second-degree criminal damage to property, possession with intent to distribute marijuana, and possession of cocaine, emphasizing in closing argument that those convictions "show[ed] [Postell] was not telling the truth" about Lawson's killing. And to rebut Postell's justification defense, the State emphasized Postell and Lawson's familial relationship, repeatedly challenged Postell's credibility, and argued that Postell actually shot Lawson out of anger about Lawson owing him money. The State also argued that Lawson was unarmed during the encounter, noting that the weapon found beside Lawson was not fired and positing that Postell planted the weapon after the shooting.

2. The State argues that the trial court erred by granting Postell a new trial because, it says, evidence of Lawson's character for violence and prior specific acts was properly excluded.

The trial court here granted a new trial pursuant to OCGA § 5-5-22, which says that "[t]he courts may grant new trials in all cases when any material evidence may be illegally admitted to or illegally withheld from the jury over the objection of the movant."

5

The grant of a new trial was based on the court's determination that evidence of Lawson's character and prior acts was erroneously excluded — specifically, the redacted portions of Postell's custodial statement, Postell's own testimony about Lawson's specific acts of and character for violence, and unspecified testimony by Postell's sister and mother. Ordinarily, we review a trial court's evidentiary rulings for abuse of discretion. See *Flakes v. State*, 323 Ga. 477, 486 (2026). But where, as here, the trial court reviews an asserted evidentiary error on a motion for new trial and grants a new trial on that basis — what is known as a special ground[3] — we review the trial court's ruling de novo. See id. at 480. See also *O'Neal v. State*, 285 Ga. 361, 363 (2009) (when a motion for new trial is granted on a special ground involving a question of law, that question is reviewed de novo).

(a) Before trial, the State filed a motion in limine to preclude Postell from presenting evidence bearing on Lawson's character, namely evidence related to Lawson's juvenile adjudication of delinquency for "[u]nlawful [u]se of [f]irearm and [h]omicide," which Postell had sought to admit at a pretrial immunity hearing, and other evidence related to Lawson's character detailed by Postell during his custodial interview. The State sought a ruling redacting the portions of Postell's custodial interview during which he referenced Lawson's gang affiliation, prior crimes, and detention in a juvenile correctional facility and preventing Postell from offering any testimony on those points, whether his own or that of other witnesses. The State argued that evidence of a victim's character is generally limited to reputation

---

[3] See *Beam v. State*, 208 Ga. 497, 497 (1951) (characterizing as a "special ground" the argument that evidence of the victim's reputation for violence was erroneously excluded).

6

or opinion evidence, citing in support of that contention *Mohamud v. State*, 297 Ga. 532, 535–36 (2015). The State further noted that the rule articulated by this Court in *Chandler v. State*, 261 Ga. 402, 407 (1991), which recognized that evidence of a victim's specific acts of violence may be admissible where the defendant argues justification, has been superseded by the current Evidence Code. After a hearing, the court granted the State's motion in full, and the court directed the State to redact the portions of Postell's custodial statement that contained "impermissible character evidence" of Lawson and Postell's "self-serving hearsay."

The day before trial, Postell filed a motion indicating that he anticipated testifying in his own defense at trial and arguing that he should be permitted both to testify about his own knowledge of Lawson's acts of violence against third parties and to present the testimony of character witnesses to show Lawson's propensity for violence, citing OCGA §§ 24-4-404(a) ("Rule 404(a)"), 24-4-404(b) ("Rule 404(b)"), and 24-4-405 ("Rule 405"), as well as decisions from this Court recognizing the admissibility of such evidence. The trial court heard argument on the motion before Postell testified. The State argued that because Postell was not physically present when Lawson committed the acts at issue, he had only "general knowledge" and not the requisite "personal knowledge" of those acts. The State also argued that evidence of Lawson's specific acts was "bad character evidence" and was categorically inadmissible under Rules 404(a) and 405. The court denied Postell's motion without explanation.

In his timely motion for new trial,[4] Postell did not

---

[4] In his motion for new trial, in addition to the evidentiary issue upon which the trial court granted a new trial, Postell sought a new trial on the general grounds and several other grounds. In granting Postell's new trial, the trial court did not address any of the other claims.

expressly address the exclusion of evidence of Lawson's character and prior acts, though he argued at the hearing on the motion that the exclusion of that evidence was error. The trial court granted Postell's motion, finding that the redacted portions of Postell's custodial statement, Postell's own testimony about Lawson's specific acts of and character for violence, and unspecified testimony by Postell's sister and mother had been wrongly excluded.[5] After recognizing that, under Rule 405(a), evidence of a victim's character is generally limited to reputation or opinion evidence, the trial court turned its focus to the admissibility of evidence of specific instances of a victim's prior acts. Addressing *Mohamud*, the case primarily relied upon by the State in opposing the admission of such evidence here, the court reasoned that *Mohamud* is both factually distinguishable from Postell's case and does not authorize the wholesale exclusion of evidence of specific instances of a victim's past conduct. Specifically, the trial court recognized that *Mohamud* affirmed the exclusion of evidence of the victim's specific acts because the defendant lacked personal knowledge of those acts. But because Postell had personal knowledge of the specific acts at issue here and argued as much, the trial court found that, under the relevant law, evidence of those acts was wrongly excluded in this case. As

---

[5] After Postell filed his amended motion for new trial, the judge who presided over his trial sua sponte entered an order transferring the case to a successor judge for disposition of the motion for new trial. In its appellate brief, the State emphasizes that Postell's motion for new trial was granted by the successor judge, though the State does not enumerate the issue as error. We note that our Code expressly authorizes a successor judge to grant or deny a motion for new trial, so the fact that the motion for new trial was granted by the successor judge here has no bearing on our decision. See *Wilson v. State*, 302 Ga. 106, 109 (2017) ("[T]here is no prohibition on a successor judge deciding a new trial motion. Quite to the contrary, our Code expressly authorizes it in OCGA § 5-5-43[.]").

8

such, the court concluded, a new trial was authorized under OCGA § 5-5-22.

(b) As detailed above, the trial court determined on motion for new trial that evidence of Postell's character for violence and of his specific acts of violence was "material evidence" that was "illegally withheld" from the jury and granted a new trial under OCGA § 5-5-22. In making that determination, the court had to assess whether it abused its discretion by excluding the challenged evidence at trial. See *Flakes*, 323 Ga. at 486. And the court found such an abuse of discretion because the relevant decisional law established that the challenged evidence was admissible for the reasons Postell argued. We review that ruling de novo. See id.; *O'Neal*, 285 Ga. at 363. So the question for us now is whether the trial court on motion for new trial "was right that the relevant law compelled the conclusion" that the challenged evidence should have been admitted. *Flakes*, 323 Ga. at 482 (explaining that when, on motion for new trial, a trial court reviews an asserted error for abuse of discretion, the ultimate question before the trial court is whether "the relevant law compelled the conclusion" that the challenged ruling should have gone the other way).

(c) We address first one category of evidence referenced in the order granting a new trial — unspecified testimony by Postell's sister and mother. The State argues that this evidence could not form the basis for the grant of a new trial because the record contains no indication of the substance of that testimony. We agree.

As the State notes, it is unclear from the record that Postell in fact sought to admit testimony from his mother and sister, and our review of the record reflects no ruling limiting such testimony. While Postell's motion to admit evidence of Lawson's character

9

for and specific acts of violence indicated that he sought to admit "the direct testimony of character witnesses," the motion is silent as to who those witnesses were or what their testimony would show. Postell did not make an offer of proof regarding that testimony at the hearing on his motion, nor is the substance of the testimony otherwise apparent from the context. As far as we can tell, what these unnamed character witnesses' testimony would show was not presented to or discussed with the trial court before or during trial. In the absence of a proffer or other showing of what the unnamed witnesses' testimony would have been, the trial court lacked "the necessary component … to consider [the] claim" that this testimony was wrongfully excluded. *Martin v. State*, 310 Ga. 658, 665 (2020). See also *Morris v. State*, 303 Ga. 192, 194 (2018) (defendant could not obtain new trial based on speculation about what a witness would have testified to). As such, the relevant law did *not* compel the conclusion that testimony from Postell's mother and sister should have been admitted at trial, and a new trial was not authorized on that basis.

(d) We proceed to address the trial court's determination on motion for new trial that the relevant law compelled the conclusion that the remaining two categories of evidence at issue — the redacted portions of Postell's custodial statement and Postell's own testimony about Lawson's violence — should have been admitted.

(i) Turning to the relevant law, we begin with the basic proposition that, as a general matter, "[a]ll relevant evidence shall be admissible[.]" OCGA § 24-4-402. And we have recognized that evidence of a victim's character and of specific instances of the victim's past conduct may be relevant to support an accused's claim of self-defense. See, e.g., *Copeland v. State*, 316

Ga. 452, 458–59 (2023). Postell argued self-defense at trial, so it was essential for him to show both that he was not the aggressor and that he reasonably feared Lawson's "imminent use of unlawful force." See OCGA § 16-3-21(a), (b)(3) ("A person is not justified in using force [in self-defense] if he … [w]as the aggressor."); *Kilpatrick v. State*, 308 Ga. 194, 196 (2020) ("To establish justification for killing another, a defendant must show the circumstances were such as to excite the fears of a reasonable person that his safety was in danger." (quotation marks omitted)). Postell sought to admit evidence of Lawson's character for violence for the purpose of showing that Lawson was "extremely and overtly aggressive" at the time of the shooting. And he sought to admit evidence of Lawson's specific acts of violence, of which Postell asserted knowledge, for the purpose of establishing his state of mind and reasonable fear of Lawson.

Under Rule 404(a), an accused may offer "evidence of a pertinent trait of character of the alleged victim," "for the purpose of proving action in conformity therewith." OCGA § 24-4-404(a)(2). That evidence, however, "is generally limited by OCGA § 24-4-405(a) to testimony as to reputation or by testimony in the form of an opinion." *Ward v. State*, 318 Ga. 884, 901 (2024) (cleaned up). "And, in cases where an accused is arguing self-defense, the accused may *only* seek to introduce evidence of the victim's violent character through the admission of reputation and opinion testimony." Id. (quotation marks omitted). In applying the federal equivalent of Rules 404(a) and 405,[6] it has been recognized that "[r]eputation or opinion testimony regarding

---

[6] OCGA §§ 24-4-404 and 24-4-405 closely track their counterparts in the Federal Rules of Evidence, so when we consider the meaning of the Georgia statutes, we look to decisions of the federal appellate courts construing and applying the federal rules. See *Strong v. State*, 309 Ga. 295, 314 n.21 (2020); *Olds v. State*, 299 Ga. 65, 69 (2016).

11

the victim's character … is pertinent in a self-defense claim to show that the victim may have been the aggressor." *United States v. Bordeaux*, 570 F3d 1041, 1049 (8th Cir. 2009).

While reputation or opinion testimony is admissible for the purpose of showing that the victim acted in conformity with his character when a defendant argues self-defense, evidence of specific instances of the victim's conduct is not admissible to show that the victim acted in conformity therewith. This is so because "a victim's violent character is not an essential element of a self-defense claim." *Strong v. State*, 309 Ga. 295, 313–14 (2020) (emphasis omitted). See also OCGA § 24-4-405(b) ("In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct."). Nevertheless, where a defendant argues self-defense, evidence of specific instances of a victim's past conduct may be admissible for another purpose: establishing "the defendant's state of mind and the reasonableness of the defendant's use of force." *Copeland*, 316 Ga. at 458 (quotation marks omitted). See also OCGA § 24-4-404(b) (allowing evidence of "other crimes, wrongs, or acts" to be "offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim"). As a precondition to admissibility, the defendant must demonstrate that he "actually knew about the victim's prior acts" at the time he acted in self-defense. *Copeland*, 316 Ga. at 459.

Applying these principles to the facts of this case, we conclude that a trial court would abuse its discretion by concluding, as the court here did at trial, that evidence of a victim's violent character and of his specific acts of violence about

which the defendant had knowledge is inadmissible as "impermissible character evidence." Rule 404(a)(2) allowed Postell to offer evidence of Lawson's violent character because that trait was relevant to Postell's claim of self-defense — specifically, to support Postell's argument that Lawson was the aggressor. See *Copeland*, 316 Ga. at 458; *Bordeaux*, 570 F3d at 1049. Of course, Rule 405 limits the form of that evidence to reputation and opinion testimony, but evidence of Lawson's reputation for violence would fit within that limitation. See id.; *Strong*, 309 Ga. at 314. And in light of Postell's showing that he had knowledge of certain specific acts of violence committed by Lawson, Rule 404(b) allowed Postell to offer evidence of those acts because that evidence is likewise relevant to Postell's self-defense claim, specifically his assertion that he reasonably feared he was in danger of imminent harm at Lawson's hand. See *Beck v. State*, 310 Ga. 491, 498 (2020) (only where "the defendant had personal knowledge" of "a victim's specific acts of violence" will those acts potentially be admissible "to show the defendant's state of mind with respect to … self-defense"). Cf. *Bordeaux*, 570 F3d at 1050 (noting that "[p]rior acts cannot provide insight into [a defendant's] 'intense fear' of [the victims] if [the defendant] himself was unaware of the acts"). See also OCGA § 24-4-401 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *Olds v. State*, 299 Ga. 65, 75 (2016) ("Relevance is a binary concept — evidence is relevant or it is not[.]"). Accordingly, it follows that the trial court did not err when it determined in its order on the motion for new trial that it had abused its discretion by excluding the evidence at issue on the basis that it constituted "impermissible character evidence."

The State resists this conclusion, urging several bases on

13

which it says the trial court was authorized to exclude evidence of Lawson's violent character and specific acts of violence. As a threshold matter, we note that the State repeatedly and improperly cites cases decided under the former Evidence Code in advancing its arguments. But as we have repeatedly explained, Rules 404 and 405 in our current Evidence Code were borrowed from the Federal Rules of Evidence, see, e.g., *Strong*, 309 Ga. at 314 n.21, so when considering the meaning of those provisions, it is not appropriate to rely on precedent decided under the former Evidence Code. See *Bryant v. State*, S26A0097, slip op. at 21 n.5 (Ga. May 5, 2026) (2026 Ga. LEXIS 128) (cautioning against relying on cases decided under the former Evidence Code).

Turning to the State's arguments, the State first complains that the evidence at issue was inadmissible because Postell failed to comply with the notice requirement of Uniform Superior Court Rule ("USCR") 31.6(a), which provides that "[t]he defense may, upon notice filed in accordance with [USCR] Rule 31.1, claim justification and present during the trial of the pending case evidence of relevant specific acts of violence by the victim against third persons." USCR 31.1, in turn, requires that such notice be filed "at least 10 days before trial unless the time is shortened or lengthened by the judge," and, as the State notes, Postell's notice was filed on the eve of trial. The State, however, did not oppose the admission of this evidence on this ground in the trial court. Thus, the State has waived any argument that the evidence was inadmissible for Postell's failure to comply with USCR 31.1 and 31.6(a). Cf. *Goodman v. State*, 293 Ga. 80, 83 (2013) (appellant waived review of the State's failure to comply with the notice requirements of USCR 31.1 and former USCR 31.3, which required that the prosecution provide notice of its intent to present evidence of a defendant's similar transactions). In any event, USCR 31.1 "grants the trial court complete discretion in

deciding whether to vary the time for filing," *Darden v. State*, 271 Ga. 449, 450 (1999), as the trial court apparently did here when it elected to consider the merits of Postell's motion.

Second, the State argues that the evidence was properly excluded because Postell failed to comply with certain procedural requirements, pointing to decisions under our former Evidence Code that applied the procedural requirements for the admission of evidence pursuant to *Chandler*, 261 Ga. at 407 (holding under former Evidence Code that "evidence of specific acts of violence by a victim against third persons shall be admissible where the defendant claims justification"). See *Laster v. State*, 268 Ga. 172, 174 (1997) (identifying three procedural requirements with which a defendant had to comply in order to admit *Chandler* evidence). But as we have recognized, and as the State itself argues, "the evidentiary rule set forth in *Chandler* does not remain viable under the [current] Evidence Code." *Mohamud*, 297 Ga. at 536. Instead, "the admissibility of evidence of a victim's character is governed by OCGA §§ 24-4-404 and 24-4-405." Id. Likewise, cases decided under the former Evidence Code addressing the procedural requirements for the admission of evidence of a victim's character pursuant to *Chandler* do not apply in cases controlled by the current Evidence Code. Cf. *Scott v. State*, 323 Ga. 312, 315 n.7 (2026) (rejecting argument that trial court erred by admitting evidence of defendant's prior difficulties with victim based on failure to hold a hearing, as required by cases decided under former Evidence Code, because those cases "do not apply in cases decided under the current Evidence Code" and "the admission of other-acts evidence is now governed by OCGA § 24-4-404(b)"). See also *Bryant*, S26A0097, slip op. at 21 n.5. As such, Postell's failure to comply with those requirements provides no basis for excluding the evidence at issue here.

15

Finally, the State argues that portions of Postell's custodial statement were properly redacted because, the State says, those portions amounted to "self-serving hearsay," which under our former Evidence Code were generally inadmissible unless the defendant testified on his own behalf. See, e.g., *Dickey v. State*, 240 Ga. 634, 641–42 (1978) (recognizing under former Evidence Code that "[s]elf-serving declarations made by a defendant are not admissible to explain his conduct" and that "[t]he defendant is allowed to declare his innocence in court" but "is not allowed to avoid this opportunity by pre-trial declarations of innocence"). And, the State continues, Postell could have sought the admission of those statements by taking the stand and testifying about them. But the State ignores that Postell attempted to do just that — Postell's motion filed on the eve of trial anticipated that he would testify in his own defense, argued that evidence of Lawson's specific acts of violence and character and reputation for violence were relevant and admissible to Postell's justification defense, and sought a ruling permitting him to offer "any relevant testimony or evidence which would tend to show the reasonableness of his belief" that use of force was necessary. So even in the unlikely event that the rule against self-serving hearsay survived the enactment of our current Evidence Code, [7]

[7] The State briefly argues that the rule against self-serving hearsay applies under the current Evidence Code, relying on this Court's decision in *State v. Hodges*, 291 Ga. 413 (2012), which itself was decided under the former Evidence Code. The State asserts that, because *Hodges* "has not been overruled," it "remains the controlling authority" on the issue of the admissibility of self-serving hearsay. It is true that we have not decided the continued viability of that rule one way or the other under the current Evidence Code, though we have flagged the issue. See, e.g., *Walker v. State*, 306 Ga. 44, 47 n.3 (2019). See also *Hodges*, 291 Ga. at 422 n.6 (2012) (Nahmias, J., concurring) (noting that "the blanket policy against 'self-serving'

16

the relevant portions of Postell's custodial statement were not subject to exclusion under that rule because he testified and was subject to cross-examination. See *Parker v. State*, 276 Ga. 598, 598 (2003) ("[T]he trial court correctly granted the motion in limine [to exclude appellant's post-arrest statement as inadmissible hearsay], which conditioned the admissibility of [appellant's] pre-trial statement on his election to testify in his own behalf.").

(ii) Whether a defendant seeks to admit reputation or opinion testimony about the victim's violent character under Rules 404(a) and 405 or evidence of specific instances of the victim's conduct under Rule 404(b), the analysis does not end with the determination that the evidence at issue was offered for a relevant purpose. Under OCGA § 24-4-403 ("Rule 403"), even otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair

---

statements, established by our case law, may not survive" the enactment of the current Evidence Code and pointing to the State Bar's comment on OCGA § 24-8-801(c) that "[t]he proposed new rules would not retain the self-serving statement rule" and that "[i]f a hearsay statement of a party is admissible under a hearsay exception, the fact that it is self-serving should go to weight, not admissibility"). We need not resolve the issue here because the State's argument fails for a different reason.

We note, however, that contrary to the State's position, the mere fact that *Hodges* and other cases applying the rule against self-serving hearsay have not been overruled does not establish that the rule remains in effect under the current Evidence Code. Rather, before applying a rule promulgated under the former Evidence Code, "lower courts should determine in the first instance whether the [current] Evidence Code has abrogated [the] rule promulgated under the [former] Code," using the same kind of analysis this Court has repeatedly applied. *State v. Orr*, 305 Ga. 729, 739 n.9 (2019). See also *State v. Almanza*, 304 Ga. 556–59 (2019) (describing the principles for applying rules promulgated under the current Evidence Code and determining what precedent to apply).

17

prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also *Biggs v. State*, 323 Ga. 546, 550–51 (2026) (applying Rule 403 to determine admissibility of evidence of victim's prior assault against third party). Ultimately, though, exclusion under "Rule 403 is an extraordinary remedy which the court should invoke sparingly, and the balance should be struck in favor of admissibility." *Carter v. State*, 302 Ga. 200, 203 (2017) (cleaned up). Indeed, a trial court's "discretion to *exclude* evidence under Rule 403 — unlike its ordinarily broad discretion to *admit* relevant evidence — [is] narrowly circumscribed." *Biggs*, 323 Ga. at 551 (quotation marks omitted).

As to the first component of Rule 403's balancing test, "the probative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable." *Olds*, 299 Ga. at 75 (emphasis omitted). "Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered," "as well upon the need for the evidence," with probative value diminishing "[w]hen the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute." Id. at 75–76. As to the test's second component — prejudicial effect — Rule 403 is concerned not with the existence of mere prejudice but with *unfair* prejudice. And as we have explained, prejudicial effect "is 'unfair' if the evidence has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Biggs*, 323 Ga. at 552 (quotation marks omitted).

As it did in the trial court, the State passingly asserts on appeal that the probative value of the challenged evidence was substantially outweighed by its prejudicial effect, such that there was no abuse of discretion in its exclusion and that the trial court erred by concluding otherwise in granting a new trial. We disagree.

Our review of the record shows that the disputed evidence here had substantial probative value. It was relevant to Postell's justification defense, specifically his need to show that Lawson was the aggressor and that his fear of Lawson was reasonable. Postell was the only eyewitness to the events immediately leading up to the shooting and to the shooting itself, so the success of his self-defense claim depended entirely on the jury's crediting his testimony. And the State centered its case on undermining Postell's credibility in an effort to undermine his self-defense claim, particularly emphasizing that Postell was not entirely candid during his initial interview with the investigators. The evidence of Lawson's prior crimes would have provided the jury with important context that could explain why Postell would fear that Lawson, his nephew, would hurt him or his other family members. And evidence of Lawson's violent character would have lent credence to Postell's testimony that Lawson armed himself and attempted to ambush Postell following their verbal altercation. Indeed, if the jury had been presented with testimony about Postell's knowledge of Lawson's prior crimes, as well as Lawson's reputation for violence, it might have believed that Postell had good reason to fear Lawson. Of course, it is certainly possible that, after threatening to "beat" Lawson, Postell went home, armed himself, and went outside to kill Lawson, as the State argued. But it is also plausible that, in response to Postell's verbal threats, Lawson armed himself and went outside to confront Postell, consistent with Postell's testimony. The

challenged evidence would have aided the jury in determining what actually happened. In light of the relevance of the challenged evidence to Postell's claim of self-defense and his need to counter the State's theory of the case, the probative value of the challenged evidence was significant. See *Biggs*, 323 Ga. at 551–52; *United States v. Taken Alive*, 262 F3d 711, 714 (8th Cir. 2001) ("Because there were no eyewitnesses to the initial confrontation between [the defendant] and [the victim], the reputation-character evidence relating to [the victim] becomes very important and material to prove [the defendant's] self-defense claim."); *United States v. James*, 169 F3d 1210, 1215 (9th Cir. 1999) (evidence of victim's prior bad acts relevant to corroborate defendant's testimony that she feared victim in self-defense case).

Turning to unfair prejudice, the State does not explain — and we do not see — how the challenged evidence would have been *unfairly* prejudicial to its case. On this record, we do not think it likely that the jury would acquit Postell on the sole basis that Lawson had a violent character or had committed previous acts of violence. See *Biggs*, 323 Ga. at 552–53 ("[T]he risk of unfair prejudice in this case was not high. The disputed evidence was relevant to support [the appellant's] state of mind and his justification defense, and the jury was not likely to acquit [him] on the sole basis that [the victim] had committed domestic violence."). And as we have said, relevant evidence "should not be excluded lightly when central to the government's case," *Brannon v. State*, 298 Ga. 601, 608 (2016), and that applies equally to relevant evidence that, as here, is central to a defendant's theory of defense. Thus, taking into account the challenged evidence's significant probative value and viewing the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact," *Carston v. State*,

310 Ga. 797, 803 (2021) (quotation marks omitted), we conclude that a trial court would abuse its discretion by excluding the evidence under Rule 403 under the circumstances presented here.

(e) To sum up, we conclude that a trial court would abuse its discretion by excluding the challenged evidence as "impermissible character evidence" under Rules 404 and 405(a). A court would also abuse its discretion by excluding the evidence on the basis that its probative value was substantially outweighed by its prejudicial effect under Rule 403. In other words, we agree with the trial court that the relevant law compelled the conclusion that the challenged evidence was admissible at Postell's trial under Rules 404 and 405. As such, it follows that the trial court did not err when it concluded that it abused its discretion by excluding this evidence at trial. We therefore affirm the grant of a new trial on that basis. [8]

*Judgment affirmed. All the Justices concur.*

---

[8] Our conclusion here that the challenged evidence cannot be excluded under Rule 403 is based on the record before us, and on retrial, Postell may introduce the evidence addressed in this opinion. Postell may also seek to introduce other evidence consistent with this opinion. To the extent he does so, the State may oppose the introduction of that evidence, also consistent with this opinion, and the trial court may be authorized to reach a different conclusion as to the admissibility of such evidence than the conclusion we reached with respect to the specific evidence addressed here.